## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH METRO AREA POSTAL    )
WORKERS UNION, AFL-CIO, a LABOR    )
ORGANIZATION, and AMERICAN    )
POSTAL WORKERS' UNION, AFL-CIO, a    )
LABOR ORGANIZATION,    )     Civil Action No. 2:12-cv-00811
   )
         Plaintiffs,    )
   )     Judge Mark R. Hornak
v.    )
   )
UNITED STATES POSTAL SERVICE,    )
   )
         Defendant.    )
   )

## OPINION

**Mark R. Hornak, United States District Judge**

This case turns a page in the latest chapter in a decades-long litigation saga between the American Postal Workers' Union ("APWU") and the United States Postal Service ("USPS") regarding the payments to be afforded once-terminated USPS employees who have benefitted from arbitration awards of reinstatement and full back pay. The Pittsburgh Metro Area Postal Workers' Union and the APWU (collectively, "Union") brought this case on behalf of two employees, seeking enforcement of their arbitration awards. Pending before the Court are the USPS's Motion to Dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction, ECF No. 11, and the Union's Motion for Summary Judgment, ECF No. 23. The Court heard oral argument on November 20, 2012, and requested supplemental briefing. The Court having considered the parties' motions and briefs in support and in opposition, ECF Nos. 12, 15, 16, 24, 25, 28, 29, and 32, those motions are ripe for disposition.

## I. FACTS AND BACKGROUND

The major relevant facts are not in dispute. The USPS and the APWU are parties to a national collective bargaining agreement, at present effective from November 21, 2010 to May 20, 2015 ("CBA"). Pl.'s Concise Stmt. Mat. Facts, ECF No. 25 ¶ 7; Am. Compl., ECF No. 8, ¶ 7. Plaintiff Pittsburgh Metro Area Postal Workers' Union is a local affiliate of the APWU, and is authorized by the APWU to bring the present action. Am. Compl. ¶¶ 8, 18. Pursuant to Article 15 of the CBA, the parties have agreed to resolve through their contractual grievance procedure any "dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment," including "the interpretation, application of, or compliance with the provisions of this Agreement." ECF No. 12-1 Art. 15.1. Section 5 of the CBA's grievance procedure provides for arbitration of grievances which have not been resolved by the parties. Am. Compl. ¶ 10. At issue here is how that arbitration process played out with regards to two employees.

The first employee, David Kello, was discharged by the USPS on November 24, 2010. ECF No. 8-3 at 3. The Union challenged this action on his behalf, and an arbitration hearing was held on February 23, 2011. *Id.* at 2. The issues before the arbitrator were "Did the Postal Service have just cause to issue the Notice of Removal? If not, what shall be the remedy?" *Id.* Arbitrator Jacquelin F. Drucker ruled that the USPS did not demonstrate that it had just cause for the removal, and that Mr. Kello was "to be returned to duty with full back pay, seniority, and benefits." *Id.* at 10. The issue of mitigation of damages was not raised at the arbitration hearing. ECF No. 25 ¶ 20; *see generally* ECF No. 8-3.

The second employee, Mary Brosovich, was discharged by the USPS on May 31, 2011. ECF No. 8-4 at 7. The Union challenged this action on her behalf, and an arbitration hearing

was held on January 20, 2012. *Id.* at 1. The issues before the arbitrator were "whether or not the Postal Service had just cause to remove the Grievant, and if not, what shall the remedy be[?]" *Id.* at 2. Arbitrator Kathleen Jones Spilker ruled that the USPS did not demonstrate that it had just cause for the removal, and that the USPS was "directed to reinstate [Ms. Brosovich] and to make her whole for lost wages and benefits, less the time of the suspension." *Id.* at 11. The issue of mitigation of damages was not raised at the arbitration hearing. ECF No. 25 ¶ 23; *see generally* ECF No. 8-4.

The arbitration awards, however, were not the end of the story for either Mr. Kello or Ms. Brosovich. Instead of compensating either employee "full back pay" for the entire time between their discharge and reinstatement, the USPS paid Ms. Brosovich for forty-five (45) days, and also paid Mr. Kello for less than the full time of his absence. ECF No. 25 ¶¶ 25, 26; ECF No. 8-4; Am. Compl. ¶¶ 16, 23.

According to the USPS, this action was proper because it was in accordance with its own Employee and Labor Relations Manual ("ELM"). The parties agree that the ELM is referenced by the CBA at its Article 19, which states that "Those parts of . . . manuals . . . of the Postal Service, that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement." ECF No. 25 ¶ 10; ECF No. 12-1 at 122.[1] Section 436.2 of the ELM states as a "[l]imitation[] to corrective entitlement" that "[b]ack pay is allowed, unless otherwise specified in the appropriate award or decision, provided the employee has made reasonable efforts to obtain other employment. . . . [employees] are allowed 45 days before they must make reasonable efforts to obtain other employment." ECF No. 12-4 at 5.

---

[1] Thus, to the extent the CBA and the ELM would be in conflict, the CBA provides that it, and not the ELM, is the trump card.

Additionally, the USPS notes that the Notices of Removal sent to Mr. Kello and Ms. Brosovich stated that "[i]f this action is overturned on appeal, back pay will be allowed . . . ONLY IF YOU HAVE MADE REASONABLE EFFORTS TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT NON-WORK PERIOD." ECF No. 12-2 at 3 (capitalization in original). For this reason, according to the USPS, because Mr. Kello and Ms. Brosovich did not demonstrate evidence of reasonable efforts to obtain other employment, it was entirely appropriate for the USPS to only pay them back pay following the arbitration awards for 45 days, rather than for the full period they were not working for the USPS due to their discharge. *See* ECF No. 8-5.

The USPS has also set forth a number of facts relating to a national dispute process between the APWU and the USPS that occurred in 2000-2001 ("National Dispute"), which the USPS has argued definitively conferred on it the right to apply the ELM after an arbitration award has been rendered. The facts that relate to that National Dispute are discussed in *infra* Part IV.B.2.

Plaintiffs brought suit in this Court on June 14, 2012 under § 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185, and under the Postal Reorganization Act, 39 U.S.C. §§ 101, *et seq.* (§§ 409 and § 1208(b) in particular), asking this Court to enforce the arbitrators' awards by ordering the USPS to give Mr. Kello and Ms. Brosovich the "full back pay" to which they are entitled. The USPS moved to dismiss the Union's suit under Fed. R. Civ. P. 12(b)(1), asserting that this Court lacks subject matter jurisdiction over the dispute, because the dispute may only be decided by an arbitrator. ECF No. 12. The Court held oral argument on that motion on November 20, 2012, after placing the parties on notice that it might consider the motion under either Rule 12(b)(1) or Rule 12(b)(6). ECF Order dated Oct. 31, 2012. At the end

4

of the hearing, the Court ordered the parties to submit supplemental briefing on the issue of res judicata/preclusion by this Court's decision in *Pittsburgh Metro Area Postal Workers' Union v. USPS,* No. 95–1706, 1997 U.S. Dist. LEXIS 12582 (W.D. Pa. May 12, 1997) ("*Pittsburgh Metro I*"). ECF Order dated Nov. 20, 2012.[2] Plaintiffs then filed a Motion for Summary Judgment, ECF No. 23. All motions are fully briefed, and the Court now turns to the parties' arguments.

## II. SUBJECT MATTER JURISDICTION

As a threshold matter, USPS asserts that this Court lacks subject matter jurisdiction. Under § 15(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b), this Court has jurisdiction over "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal employees." Section 15(b) has been interpreted uniformly with the nearly-identical § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), which confers on federal district courts the jurisdiction to enforce arbitration awards that are not inconsistent with the terms of a collective bargaining agreement between parties, and to direct those parties to undertake an arbitration process they have contracted to follow. *See Union Switch & Signal Div. Am. Std. Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610*, 900 F.2d 608, 612 (3d Cir. 1990); *APWU of Los Angeles v. USPS*, 861 F.2d 211, 215 (9th Cir. 1988);[3] *Podobnik v. USPS*, 409 F.3d 584, 586 n.1 (3d Cir. 2005).

More specifically, when an arbitration award has already been entered, a Court may only enforce it if it is a "final and binding award." *Union Switch*, 900 F.3d at 613. However, our Court of Appeals has held that the requirement that an arbitration award be "final and binding"

---

[2] The Court also asked the parties at oral argument to consider whether this case could or should have been filed as a "related action" to *Pittsburgh Metro I*. Both parties in their briefing stated that it should not. *See* ECF No. 28 at 11 n.7.

[3] For ease of reference, the "American Postal Workers Union, AFL-CIO" and the "United States Postal Service," when they appear in case citations, are abbreviated as "APWU" and "USPS," respectively.

before it can be enforced – the so-called "complete arbitration rule" – is not one that determines this Court's subject matter jurisdiction over the matter. *See id.* at 612. The complete arbitration rule "while a cardinal and salutary rule of judicial administration, it is not a limitation on a district court's jurisdiction," which is conferred by Congress in § 15(b) and § 301. *Id.* Therefore, while the ambiguity of the arbitrator's award *vel non* may be entirely relevant to determine whether the Union has stated a claim for relief, it is not relevant to this Court's subject matter jurisdiction, which has already been conferred by Congress. *See Bensalem Park Maint., Ltd. v. Metro. Reg'l Council of Carpenters*, CIV.A. 11-2233, 2011 WL 2633154, at *4 (E.D. Pa. July 5, 2011) (applying *Union Switch* to hold subject matter jurisdiction proper before determining arbitrability); *Pittsburgh Metro Area Postal Workers' Union, AFL-CIO v. USPS*, CIV.A. 07-00781, 2008 WL 1775502, at *3-4 (W.D. Pa. Apr. 16, 2008) ("*Pittsburgh Metro II*") (same); *see also Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2876-77 (2010) ("subject-matter jurisdiction, by contrast, 'refers to a tribunal's power to hear a case.' It presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief.") (internal citations omitted).

Even so, the USPS argues that under the *Steelworkers* Trilogy of cases, this Court lacks subject matter jurisdiction over the present dispute, and filed its motion to dismiss under Fed. R. Civ. P. 12(b)(1). *See* Def.'s Mot. Dismiss at 11 n.4. The *Steelworkers* Trilogy is a line of Supreme Court cases which established the principles for determining when a grievance is arbitrable, in particular in the setting of a collective bargaining agreement. *See United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960). Together, these cases stand for "a strong national

policy favoring the resolution of disputes by arbitration," *Union Switch*, 900 F.2d at 615, and a presumption that when an arbitration clause in a contract is present, a grievance is arbitrable "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied-Indus. & Serv. Workers Local Union 943 v. E.I. DuPont de Nemours & Co.*, 338 F. App'x 209, 213 (3d Cir. 2009) (internal citation omitted); *see also Rite Aid of Pa., Inc. v. United Food & Commercial Workers Union, Local 1776*, 595 F.3d 128, 139 (3d Cir. 2010) (Ambro, J., dissenting) (discussing four principles of the *Steelworkers* Trilogy); *Nat'l Ass'n of Letter Carriers, AFL-CIO v. USPS*, 272 F.3d 182, 185 (3d Cir. 2001) ("*Letter Carriers*").

The Court does not in any way doubt the continued the vitality of the policy embodied in the *Steelworkers* Trilogy. The trouble with the USPS's argument, no matter vehemently made, is that that policy, at least as applied to disputes over the meaning of an arbitration award that has been entered, is not "jurisdictional" in its scope. It is instructive that the court in *Union Switch* discussed the "strong national policy favoring arbitration" embodied in the *Steelworkers* Trilogy, at the same time it upheld the propriety of subject matter jurisdiction. *See* 900 F.2d at 615; *see also Bensalem*, 2011 WL 2633154, at *7 (discussing *Steelworkers* Trilogy, yet upholding subject matter jurisdiction); *Pittsburgh Metro II* (citing *Steelworkers* Trilogy; same); *Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 45 n.1 (3d Cir. 1991) (arbitrability does not go to subject matter jurisdiction).

Therefore, while the precepts of the *Steelworkers* Trilogy undergird this Court's analysis of the arbitrability of this dispute, they are not jurisdictional, at least as applied here.[4] USPS's

---

[4] To be sure, the language used by the Third Circuit as to whether arbitrability goes to jurisdiction or to stating a claim has not always been a font of clarity. *See Nova CTI Caribbean v. Edwards*, CIV.A. 03-5319, 2004 WL 35759 (E.D. Pa. Jan. 8, 2004) (discussing confusion in applying Rule 12(b)(1) versus 12(b)(6) in arbitrability disputes). The court in *Union Switch* noted that its prior opinions had at times referred to the complete arbitration rule "in

motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction must be denied, and this Court has the power to decide the issues before it.

Just because the USPS may have relied on the incorrect provision of Fed. R. Civ. P. 12 in its motion to dismiss, however, does not mean that the arguments contained therein may not be considered at all. This Court may consider a Rule 12(b)(1) motion under Rule 12(b)(6) instead if it is more properly viewed in that light, and the Court does so here. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).[5] Because the arguments asserted in the USPS's Motion to Dismiss are in many ways the mirror image of those asserted in the Union's Motion for Summary Judgment, those arguments will now be considered together, though each is subject to its own standard of review.

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). In short, a

---

jurisdictional terms," but disavowed those pronouncements as nonbinding dicta. 900 F.2d at 613-14. It is with that observation in mind that the Court concludes that while the Third Circuit more recently in *Trenton Metro. Area Local of APWU v. USPS*, 636 F.3d 45, 56 (3d Cir. 2011) referred once to a district court's enforcement of a settlement agreement that resolved a dispute that would otherwise have been governed by an arbitration provision in terms of "subject matter jurisdiction," the Circuit panel there did not intend *sub silentio* to disavow or overrule the thoroughly-considered prior holding in *Union Switch. See* U.S. Ct. App. 3d Cir. Internal Operating Procedures, Ch. 9.1 (2010 ed.) (prior panel decisions may be overruled only by an *en banc* court). In fact, the use of "jurisdictional" nomenclature in *Union Switch* was subjected to the crucible of a spirited dissent at the panel level, 900 F.2d at 616-620, and thereafter *en banc* consideration was sought and denied, *id.* at 620-21. The extent to which *Trenton's* statement applies beyond the judicial enforcement of the settlement agreements in play in *Trenton* to other arbitrability disputes under § 15/§ 301 need not be decided here – the Court concludes that whatever the scope of that pronouncement in that case (in which the parties had not gone to arbitration at all, 636 F.3d at 50-51), it does not sweep away the holding of *Union Switch*, which is squarely on point here.

[5] Indeed, it is for this reason that this Court put the parties on notice that it might be considering Defendant's Motion under Rule 12(b)(6) instead of Rule 12(b)(1) before oral argument was held on the Motion.

motion to dismiss should be granted only if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler*, 578 F.3d at 211.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 162 (3d Cir. 2001).

## IV. DISCUSSION

### A. Enforcement of Arbitration Award

Perhaps most fundamentally, the parties contest whether the Union is asking this Court to "interpret" or to "enforce" the arbitral awards at issue. According to the USPS, this is an "interpretive dispute" over the meaning of the term "full back pay," the resolution of which can, may, and must be conducted by an arbitrator. According to the Union, this is simply an "enforcement action," and any counterarguments the USPS might now present as to the enforceability of the arbitrator's award are strictly barred as having been waived.

As noted above, this Court has the authority to enforce awards issued by an arbitrator when one party does not comply with the award. *See Union Switch*, 900 F.2d at 612. When a court is considering an arbitration award, its first task is to examine whether the arbitrator's decision exceeded his authority. *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004). Here, the parties by way of the CBA agreed to submit to arbitration any "dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment," including "the interpretation, application of, or compliance with the provisions of this Agreement." Art. 15.1, ECF No. 12-1 at 87. The parties

9

do not contest that both arbitrators in this case, in resolving a dispute regarding employees' termination and awarding them back pay, acted within their authority.

Additionally, a court may only enforce an arbitration award in a case such as this if it is a "final and binding award." *Union Switch*, 900 F.3d at 613.[6] In so doing, the court may not re-evaluate the merits of the arbitrator's decision. *Letter Carriers*, 272 F.3d at 185. However, "when the remedy awarded by the arbitrators is ambiguous, a remand for clarification of the intended meaning of an arbitration award is appropriate." *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir. 1991) (citing *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co. Ltd.*, 868 F.2d 52, 58 (3d Cir. 1989)). "[W]here all that remains in terms of the remedy is a computation of the amount of damages, such outstanding issues are typically described as 'ministerial' and, likewise, does not render the award non-final." *Bensalem,* 2011 WL 2633154, at *5. Thus, the primary question before this Court is whether the arbitrators' awards here were ambiguous, and therefore, not final.

Arbitrator Drucker found that Mr. Kello was removed without just cause, and ordered the USPS to reinstate him with "full back pay, seniority, and benefits." ECF No. 8-2 at 9-10. Similarly, Arbitrator Spilker found that Ms. Brosovich was improperly removed, and ordered that the USPS "reinstate [her] and make her whole for lost wages and benefits, less the time of the suspension." ECF No. 8-4 at 11. The Union argues that "full back pay" and "make whole for lost wages and benefits" are unambiguous awards that cannot now be second-guessed by this Court.

---

[6] The "final and binding" requirement is one that is both present under the CBA here, *see* Art. 15.5.A.6, ECF No. 12-1 at 100, as well as under the jurisprudence of this Circuit considering § 301 more generally, *see Union Switch*, 900 F.2d at 613 n.5. This is not unrelated to the policy embodied in the *Steelworkers* Trilogy that the Court must not interject itself into the arbitration process the parties have agreed upon.

The USPS argues in return that the terms of ELM § 436.2 permit the USPS, in calculating back pay after an arbitration award has been issued, to consider an employee's reasonable efforts to seek alternative employment, and the dispute over its ability to do so renders the award ambiguous. *See* ELM § 436.2, ECF No. 12-4 at 5 ("[b]ack pay is allowed, unless otherwise specified in the appropriate award or decision, provided the employee has made reasonable efforts to obtain other employment. . . ."). The USPS also points to the fact that it notified the employees in their Notices of Removal that they would be required to make reasonable efforts to obtain other employment in order to recover back pay. *See* ECF No. 12-2 at 3.

Additionally, the USPS argues that applying the ELM after the issuance of an arbitration award is proper because "a national dispute" between the APWU and the USPS sometime around 2000-2001 incorporated this post-arbitration application of the ELM into the CBA itself; that argument is further examined *infra* Part IV.B.2. For this reason, according to the USPS, because Mr. Kello and Ms. Brosovich did not demonstrate evidence of reasonable efforts to obtain other employment, it was appropriate to only pay them back pay for 45 days following the arbitrator's award, rather than for the full time they were laid off. *See* ECF No. 8-5. Therefore, according to the USPS, the dispute here is "whether the proper methodology was applied in calculating the damages," a dispute which may only be resolved by the arbitrator. Def.'s Mot. Dismiss at 13.

In considering these competing arguments, this Court hardly writes on a blank slate. No fewer than six other federal district court judges (two of which sit in this Circuit) have considered this identical issue between these very same parties. In each case, arbitrators issued awards of "full back pay" to employees. In each case, the USPS attempted after the fact to have that award reduced by reference to ELM § 436's mitigation provision, prompting the employees

to seek judicial enforcement of the award.[7] And in each case, the courts enforced the awards and refused, over the USPS's objections, to resubmit them to arbitration. *See, e.g., APWU, Philadelphia, Pa. Area Local v. USPS*, 222 F. Supp. 2d 675 (E.D. Pa. 2002) ("*APWU Philadelphia*"); *Pittsburgh Metro Area Postal Workers' Union v. USPS*, No. 95–1706, 1997 U.S. Dist. LEXIS 12582 (W.D. Pa. May 12, 1997) ("*Pittsburgh Metro I*"), *report and recommendation adopted*, 1997 U.S. Dist. LEXIS 15069 (W.D. Pa. June 18, 1997); *APWU v. USPS*, No. 00–CV–817, slip op. (S.D. Cal. Aug. 8, 2000) ("*APWU McManis*"); *APWU, Brooklyn Local v. USPS*, No. 88–C–1974, 1989 WL 35953 (E.D.N.Y. March 29, 1989) ("*APWU Brooklyn*"); *Elwell v. USPS*, C A 606-CV-1449-GRA, 2007 WL 1075130 (D.S.C. Apr. 6, 2007) ("*Elwell*"); *Coppage v. USPS*, 119 F. Supp. 2d 1375 (M.D. Ga. 2000) ("*Coppage*"), *reconsideration denied*, 129 F. Supp. 2d 1378 (M.D. Ga. 2001), *rev'd on other grounds*, 281 F.3d 1200 (11th Cir. 2002). This Court is not aware of a single judicial opinion holding otherwise. Moreover, a number of courts considering different employers' attempts to impose a mitigation requirement post-arbitration award have held the same and enforced the awards. *See, e.g., Int'l Union of Bricklayers & Allied Craftworkers, Local 5 v. Inter-State Tile & Mantel Co., Inc.*, 1:07-CV-1150, 2010 WL 2034695 (M.D. Pa. May 18, 2010) ("*Bricklayers*"); *Teamsters, Local Union 330 v. Elgin Eby-Brown Co.*, 670 F. Supp. 1393, 1398 (N.D. Ill. 1987).

The essential reasons expressed in the various opinions are the same.[8] Many of the opinions view the issue in terms of waiver, holding that because the USPS had not raised its

---

[7] A central premise of the sanctity of the arbitration process recognized by the *Steelworkers* Trilogy is that arbitration was to provide to employers, unions, and employees relatively fast, inexpensive, and certain resolutions to workplace disputes. The USPS's serial approach to relitigation of the application of ELM § 436, which is based on the USPS's seemingly perpetual desire to engage in follow-up arbitrations of back pay awards, runs precisely counter to those principles.

[8] The USPS counters that all of these cases are distinguishable, because a national dispute process circa 2001 granted to the USPS the right to apply the ELM after an arbitration award, which never applied to the previous cases. For the reasons further explained in *infra* Part IV.B, the Court does not find that the USPS has demonstrated

ELM-based mitigation of damages theory before the arbitrator below, it could not later do so before a federal court. *E.g. Elwell*, 2007 WL 1075130, at *2 ("Because the Postal Service failed to raise the issue of mitigation of damages in either of the first two arbitrations, the Postal Service waived any right it had to pursue this mitigation defense."); *see also Coppage*, 119 F. Supp. 2d at 1381; *APWU Philadelphia*, 222 F. Supp. 2d at 685. This Court agrees with the thrust of that conclusion – that the USPS may not later inject a self-generated ambiguity or uncertainty into an arbitration award where there is no reason to believe there was one to begin with, and where it demonstrably bypassed the opportunity to raise and litigate it at the arbitration.[9] These opinions also note that despite the USPS's assertions that it has been its practice to apply the ELM § 436 after an arbitration award of back pay, "such a practice 'does not justify the Postal Service's attempt to impede a court's enforcement of an arbitration award.'" *APWU Philadelphia*, 222 F. Supp. 2d at 685 (quoting *APWU McManis*, slip op. at 9). Finally, the cases note that the USPS's position conflicts with the CBA Article 15, which states that arbitration awards shall be "final and binding": "[i]n essence, the Postal Service determines whether the individual should receive back pay after the arbitrator has already determined the issue." *Pittsburgh Metro I*, 1997 U.S. Dist. LEXIS 12582, at *29; *accord APWU Philadelphia*, 222 F. Supp. 2d at 685; *APWU Brooklyn*, 1989 WL 35953, at *5.[10] This Court agrees with the holdings of these courts.

---

that this national dispute altered the parties' contractual relationship or obligations in any material way, and this argument is unavailing.

[9] This Court does not believe that it must decide here whether as a blanket rule, a party that fails to bring an argument before an arbitrator always has irrevocably waived it for all time. What is clear is that the USPS had the opportunity to address the application of the ELM at these arbitrations, and did not do so. Given the long line of cases rejecting the USPS's efforts to repeatedly get two bites at the arbitration apple, the USPS was plainly on notice that it needed to do so here.

[10] To this end, some courts correctly observe that the ELM itself is silent on *when* it is to be applied, and thus its terms do not themselves dictate a contrary result. *See Pittsburgh Metro I*, 1997 U.S. Dist. LEXIS 12582, at *29.

This Court adds to the dialogue that in its estimation, remand here is improper because the dispute here is not over an ambiguous "method of calculation" – it is a unilateral attempt by the USPS to undermine an award that the USPS may not find palatable, but is nonetheless "final and binding" in any sense of the phrase. It is for this reason that the cases cited by USPS are not contrary to this Court's conclusion. In *Pittsburgh Metro Area Postal Workers' Union, AFL-CIO v. USPS*, CIV.A. 07-00781, 2008 WL 1775502 (W.D. Pa. Apr. 16, 2008) ("*Pittsburgh Metro II*"), an arbitrator rendered a decision that required USPS to make payment to certain workers for a certain number of hours worked at an hourly rate that could be later agreed upon: "[if the parties wish, they may substitute 'at the level 5, step 0 rate' or establish an equivalent average dollar amount applicable over that time period." *Id.* at *2. The arbitrator ruled that if "interpretive questions [as to calculating the award] remain, I retain jurisdiction over the remedy so as to resolve any questions or disputes." *Id.* The court first found that the award could not be enforced – because "part of said award require[d] the parties to come to an agreement as to the rate of pay," it was not "final and binding." *Id.* at *8. The court also concluded that remand to the arbitrator was appropriate because another part of the award was sufficiently "ambiguous," as the arbitrator's decision contained statements that conflicted as to what group of people could properly receive compensation under the award. *Id.* Similarly, in *Suarez v. USPS*, 178 F. Supp. 2d 69, 72 (D.P.R. 2001), *aff'd*, 75 F. App'x 790 (1st Cir. 2003), the district court (and the First Circuit) refused to consider a dispute over an arbitration award of "full back pay," where Suarez claimed that the USPS underpaid him by "miscalculat[ing] the amount of back pay by relying on the hours of an 'atypical' USPS employee." *Id.* at 73.[11]

---

[11] It is interesting that, for whatever reason, the USPS did *not* attempt to offset Mr. Suarez's interim earnings from "full back pay" by application of ELM § 436, as it has here and elsewhere.

The awards at issue in *Pittsburgh Metro II* and *Suarez* are wholly different in kind from those here. They involved disputes over the proper identity of the recipient of an award, the proper rate at which the recipients should be awarded, and the proper number of hours to be considered in "back pay." Those issues can indeed be considered to be collateral disputes that arise out of ambiguities in an arbitration award – or collateral disputes as to the calculation of an award. But here, there is no dispute as to rates, hours, or individuals to be considered – the only issue is the USPS's desire to diminish "full back pay" after the fact by applying a mitigation rule nowhere referenced in the arbitration award. The terms of the awards rendered here, "full back pay, seniority, and benefits" and "make her whole for lost wages and benefits, less the time of the suspension" carry no ambiguity as to their completeness.[12] The dispute self-generated by USPS here cannot properly be considered a difference as to "calculation" or "interpretation," but rather is a naked attempt to undermine that which has already been finally determined.[13]

This conclusion is supported by the *Bricklayers* decision, in which the court also refused to allow the employer to deduct from a "make-whole" arbitration award an amount related to the employee's mitigation of damages. 2010 WL 2034695. The court noted that while a dispute over the hourly rates to be awarded might have created an "ambiguity with respect to the method of calculating the amounts which [the employer] must contribute," *id.* at *1 (citing *Pittsburgh*

---

[12] The Court is sensitive to the fact that what is "ambiguous" and what is not can often lie in the eye of the beholder. As Justice Brennan has cautioned in the context of statutory interpretation, "as every attorney knows, *any* statutory provision can be made ambiguous through a sufficiently assiduous application of legal discrimination." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 315-16 (1979) (Brennan, J., concurring in part and dissenting in part). In considering what makes an "ambiguity," the *Pittsburgh Metro II* court noted that "[a]n ambiguity warranting remand exists where an award is subject to at least two interpretations, or where an award fails to take into account circumstances that arise after it has been made. Moreover, remand is appropriate where the court does not know what it is being asked to enforce." 2008 WL 1775502, at *11. This Court concludes that that threshold for ambiguity is not met in the arbitral awards at issue here.

[13] Nor does the fact that the USPS's Notices of Removal to discharged employees suggest that even an arbitral award of back pay will only be allowed if the employee has made reasonable efforts to obtain other employment alter the analysis in any way. Just because the USPS suggested in a letter to Mr. Kello and Ms. Brosovich that it had the right to apply the ELM after an arbitration decision was rendered does not make it so, and does not render the arbitration award any more ambiguous based on a unilateral statement made outside the context of the CBA.

*Metro II*, 2008 WL 1775502), the "mitigation of damages defense" did not constitute such an ambiguity. *Id.* Here too, the USPS is not permitted to inject an ambiguity into the arbitration award that does not exist in the award itself.[14]

Because Plaintiffs have adequately stated a claim for relief which this Court has the power to grant, namely enforcement of an arbitration award, and the undisputed record compels the grant of that relief, Defendant's Motion to Dismiss, construed as a 12(b)(6) motion, must be denied.[15]

## B. Collateral Estoppel

The Union further argues that it should prevail not only because the six other district court opinions considering this issue are correct in their analyses, and so this Court *should* rule in conformity with them, but also because the holding of at least one of them has preclusive effect on this case, and this Court *must* act in conformity with it. *See Pittsburgh Metro Area Postal*

---

[14] The USPS offers no substantive justification for its not raising its ELM-based mitigation argument before the arbitrator in the first instance. It can't be because it does not want an arbitrator to decide that issue at all, since it is perfectly willing to let a second arbitrator consider it after the fact. The necessary consequence of the USPS's approach is the multiplication of arbitration proceedings (and their attendant costs in time and money) for no apparent reason. This approach runs counter to the principles embodied in the *Steelworkers* Trilogy -- the fast, inexpensive, certain and final disposition of workplace disputes.

[15] "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In deciding Defendant's Motion to Dismiss, the Court has considered Plaintiff's Amended Complaint and the documents attached thereto. Additionally, of the exhibits attached to Defendant's motion, the CBA, ECF No. 12-1, is integral to Plaintiffs' claim. The Notices of Removal sent to Mr. Kello and Ms. Brosovich, ECF Nos. 12-2, 12-3, are also integral to Plaintiffs' claim and explicitly referred to in the Amended Complaint, *see* ECF No. 8 ¶¶ 11, 20. The ELM itself, ECF No. 12-4, *available at* http://about.usps.com/manuals/elm/html/ is a matter of public record, and no party has ever disputed its authenticity. *See Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 482 (W.D. Pa. 2012) ("Summary" on FDA website public record); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993). The Court does not, and need not, consider the Back Pay Reports, ECF Nos. 12-5, 12-6, especially because the parties agree that Mr. Kello and Ms. Brosovich were not awarded "full back pay," but a reduced amount of back pay. Therefore, the documents that have been considered allow this Court to review Defendant's motion under the 12(b)(6) standard. The Court also notes that the arguments contained in Plaintiff's Motion for Summary Judgment are in many ways the mirror image of Defendant's Motion to Dismiss, and therefore Defendant's rights are in no way prejudiced by this determination as it has had an adequate opportunity to advance any evidence in its favor that it deems necessary.

*Workers' Union v. USPS,* No. 95–1706, 1997 U.S. Dist. LEXIS 12582 (W.D. Pa. May 12, 1997) ("*Pittsburgh Metro I*"). This Court agrees.

The rule of collateral estoppel, or issue preclusion, "derives from the simple principle that later courts should honor the first actual decision of a matter that has been actually litigated." *Burlington N. R. Co. v. Hyundai Merch. Marine Co., Ltd.,* 63 F.3d 1227, 1231 (3d Cir. 1995) (internal marks and citation omitted).[16] The following four elements are required for the doctrine to apply: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,* 602 F.3d 237, 247-48 (3d Cir. 2010) (internal quotation omitted).[17] This general rule is subject to a number of equitable exceptions, which vary based on how estoppel is to be applied.

### 1. *Identity of Issues*

The USPS only asserts that the first element, identity of issues, is not met.[18] The USPS has not asserted that the issue was not actually litigated in *Pittsburgh Metro I*, that it was not necessary to the court's decision, and that the USPS was fully represented in the prior action. By way of background, in *Pittsburgh Metro I*, the identical parties to those here litigated before

---

[16] The Court specifically requested that the parties file supplemental briefing "regarding the potential res judicata/preclusive effect of" *Pittsburgh Metro I.* ECF Order dated Nov. 20, 2012. The term "res judicata" can encompass both claim preclusion and issue preclusion/collateral estoppel. *See United States v. 5 Unlabeled Boxes,* 572 F.3d 169, 174 (3d Cir. 2009). The parties in their briefing have each expressed their belief that claim preclusion does not apply to the current action, although they disagree as to the reason why it does not apply. *See* Def.'s Resp. Pls.' Mot. S.J., ECF No. 28, at 11. Therefore, without inquiring to the merits of the parties' arguments on claim preclusion, the Court does not evaluate its application here.

[17] Collateral estoppel does not require that the same *claim* be presented in each action. Restatement (Second) of Judgments § 27, *cmt. b.* (1982).

[18] More accurately, the USPS posits that because the first element is not met, "by logical consequence, the remaining factors are also not met because they pertain to the specific issue litigated in the earlier action." Def.'s Resp. Pls.' Mot. S.J., ECF No. 28, at 10. The Court does not agree that this is the logical consequence at all.

Magistrate Judge Caiazza, who rendered a Report and Recommendation that was adopted by District Judge Ziegler. 1997 U.S. Dist. LEXIS 12582. There, as here, two arbitrators had reversed the removals of two employees, stating that the one should be "made whole for lost benefits and wages" and the other should "be made whole for any loss of pay. . . i.e. back pay, less any amounts she may have received by way of unemployment compensation."). *Id.* at *14, 17. After the awards were issued, the USPS unilaterally determined that the employees did not meet the requirements of ELM § 436 regarding reasonable efforts to obtain other employment, and therefore refused to give either any back pay. *Id.* The court considered the question of "whether the issue concerning the mitigation of damages should be presented at the arbitration hearing or decided after the arbitration hearing." *Id.* at *27-28. The court held that the USPS was required to have presented any mitigation evidence or arguments at the arbitration hearing, and therefore "ordered [the USPS] to award [the employees] their back pay in accordance with the arbitrators' decisions." *Id.* at *33.

The USPS does agree that in many ways, the issues considered by the *Pittsburgh Metro I* court and by this Court are one and the same. *See* Resp. at 28 ("To be clear, the issue that [*Pittsburgh Metro I*] put before this Court in 1997, and the issue which it purports to put before this Court presently is whether the Postal Service has waived its right to reduce back pay for a failure to mitigate damages in accordance with ELM 436.12 because it did not raise this issue at the underlying arbitrations."). As any fair reading of the *Pittsburgh Metro I* opinion makes plain, it is hard to imagine any cleaner identity of issues.

However, the USPS argues that the issues are not, in fact, identical for two reasons. The first can be disposed of rather easily, while the second requires a deeper analysis. First, the USPS argues that the issue in *Pittsburgh Metro I* is distinguishable because the USPS there

offered the employees *no back pay at all*, where here, it gave them forty-five (45) days' back pay. Therefore, according to the USPS, the issue in the prior action was "outcome-determinative," but here, it is an "interpretive" dispute. ECF No. 28 at 9. The Court cannot discern why the amount of the award makes any difference. There, as here, the USPS sought to contravene an arbitrator's award of "full back pay" by unilaterally injecting after the fact the mitigation principles of its ELM § 436. That the USPS unilaterally elected to award $0 or some amount greater than $0 in so doing makes no difference whatsoever – the issue decided in *Pittsburgh Metro I* was that the USPS does not get to make that election at all.

Second, the USPS argues that the parties engaged in a national grievance-arbitration process in 2000-2001, after *Pittsburgh Metro I* was decided ("National Dispute"), and that the outcome of that process renders the issue before this Court different from that before the court in 1997. In essence, the argument is that a change in factual circumstances after the prior determination bars the application of collateral estoppel here.

### 2. *Changed Circumstances*

Courts appear to waver in considering whether "changed circumstances" vitiates the application of the "identical issue" element of collateral estoppel, or whether it presents an equitable exception to the application of collateral estoppel, even if the "issue" to be determined is the same.[19] *Compare Anspach ex rel. Anspach v. City of Philadelphia*, 380 F. App'x 180, 184 (3d Cir. 2010) (using "identity of issues" terminology) *and Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 477 (3d Cir. 1997) (same) *with Leventry v. Price*, 319

---

[19] The equitable exceptions to collateral estoppel vary based on the proposed use of the estoppel. This is a case of offensive mutual estoppel, "offensive" because Plaintiffs seek to estop a Defendant who previously litigated and lost an issue, and "mutual" because the parties here are the same as those in *Pittsburgh Metro I*. *See Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002). The relevant equitable factors to be considered in a case of mutual collateral estoppel are summarized in § 28 of the Restatement (Second) of Judgments. *See id.* The USPS points to the rule that "a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws," Restatement (Second) of Judgments § 28(2)(b).

F. Supp. 2d 562, 568 (W.D. Pa. 2004) (holding collateral estoppel elements met, considering "changed circumstances" in the context of an "exception to the general rule of collateral estoppel") *and Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 90-91 (1st Cir. 2007) (same). However, regardless of the lens through which the Court views "changed circumstances," the legal standard appears to be the same.

"[W]hen significant new facts grow out of a continuing course of conduct the issues in a successive suit may fail to constitute the same 'issue' so as to merit preclusive effect." *Hawksbill*, 126 F.3d at 477. However, "carried to its extreme, the concept of changed factual circumstances could totally undermine the application of collateral estoppel. . . . Thus, where the changed circumstances are not material, and therefore do not amount to controlling facts, collateral estoppel remains applicable." *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 846 (3d Cir. 1974); *see Leventry v. Price*, 319 F. Supp. 2d 562, 568 (W.D. Pa. 2004). Therefore, the question presented is whether the events of the National Dispute in 2000-2001 rendered the circumstances materially changed since *Pittsburgh Metro I* in 1997. Without further ado, the Court now turns to the merits of that consideration, which constitutes the USPS's most forceful challenge to the application of collateral estoppel, and its most energetic argument against Plaintiffs' Motion for Summary Judgment.

a. Factual History of the National Dispute

A USPS representative sent a letter on September 5, 2000 to the APWU President, stating that the USPS was initiating a Step 4 Dispute pursuant to Article 15 of the CBA, on the issue of "[w]hether . . . [ELM] Subsection 436.12 is applicable after receipt of an arbitrator's decision awarding full back pay." ECF No. 28-1 at 12. The only other piece of physical evidence offered by the USPS relating to the National Dispute is another letter from a USPS representative to an

APWU member on April 19, 2001. *Id.* at 18. That letter stated that the parties met "recently to discuss" the grievance at issue, and stated their respective positions, and reaffirmed the USPS's position that it had the authority to unilaterally apply the ELM after an arbitration award. *Id.* Importantly, the letter ends by stating, "Time limits were extended by mutual consent."[20]

The USPS contends that the result of this correspondence is that the USPS's position became the final, binding determination of this issue, one that had been plaguing the parties for decades. Section 15.2.Step 4 of the CBA states:

> Step 4:
> (a) if any dispute properly initiated at this step by the appropriate National Union/Management Representative, the parties shall meet at the National level promptly, but in no event later than thirty (30) days after initiating such dispute in an effort to define the precise issues involved, develop all necessary facts and reach agreement. . . . The parties' Step 4 representatives may, by mutual agreement, return any dispute to Step 3 where (a) the parties agree that no national interpretive issue is fairly presented or (b) it appears that all relevant facts have not been developed adequately. . . . Should the parties at the National level fail to reach agreement, then within fifteen (15) days of such meeting each party shall provide the other with a statement in writing of its understanding of the issues involved, and the facts giving rise to the interpretive dispute. In the event the parties have failed to reach agreement within sixty (60) days of the initiation of the dispute, the Union then may appeal it to national arbitration within thirty (30) days thereafter. Any local grievances filed on the specific interpretive issue shall be held in abeyance at the appropriate level pending resolution of the national interpretive dispute.

ECF No. 12-1 at 15.

According to the USPS, the April 19, 2001 letter constituted the USPS's "statement in writing of its understanding of the issues involved." It asserts that the APWU never responded to that letter, and that "[b]y failing to respond to the Postal Service's Step 4 letter, the APWU waived its right to now argue that the USPS is precluded from applying ELM 436 to back pay calculations after an award has been issued." ECF No. 28 at 12. In other words, the USPS's

---

[20] Nowhere does it identify the "time limits" involved, the length of extension granted or agreed to, or whether (and to what effect) the extension expired.

position in the April 19, 2001 letter is now "the final word on the subject." Decl. Patrick M. Devine, Dec. 11, 2012, ECF No. 28-1 at 8.

### b. Analysis of the National Dispute[21]

The Union in response launches two attacks to the USPS's assertion of the effect of the National Dispute. The first is one of form: that the Declaration of Patrick M. Devine that accompanied the two letters was made by a person without personal knowledge of those events, and therefore the statement and the letters may not be considered under Fed. R. Civ. P. 56(c)(2) and 56(c)(4). The second is one of substance: that in part based on the incompleteness of the Affidavit, there is no way to know what the effect of the various letters actually was.

Turning first to the procedural argument, Fed. R. Civ. P. 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." According to Mr. Devine's Declaration, he is "the Manger of Contract Administration" for the USPS relating to the APWU and Labor Relations. ECF No. 28-1 at 6. He joined the Postal Service Law Department in 2002 and joined the Labor Relations Department in 2005. *Id.* In August 2012, he "directed [his] staff to research whether the parties have addressed back pay disputes at the national level," where he learned about the 2000-2001 National Dispute. *Id.* He reviewed the letters, and states that "The APWU neither sent its own letter nor appealed the matter to national arbitration, as set forth in Article 15.2 (Step 4). As such, the Postal Service's position is the final word on the subject . . . and the

---

[21] The USPS and the APWU also argued before the court in *APWU Philadelphia* whether the National Dispute had any effect on the USPS's ability to apply ELM § 436 after an arbitration award. While the court thoroughly detailed the underlying facts and the nature of the arguments relating to the National Dispute, it did not answer that question because the arbitration awards before it were rendered in June 2000, which occurred before the April 19, 2001 letter would have even hypothetically effected any change to the CBA. *See APWU Philadelphia*, 222 F. Supp. 2d at 487-88. Because the arbitration awards here were rendered in 2012, this Court must address the argument on its merits.

APWU has waived its opportunity to respond or otherwise contest it." *Id.* at 8. It is apparent from the face of Mr. Devine's Declaration that any knowledge he has about the National Dispute is anything but personal. Therefore, the USPS is not permitted to rely on his assertions for affirmatively establishing facts in opposition to the Union's Motion for Summary Judgment, including his assertions about any intervening matters not actually contained in the letters, such as whether the APWU responded to the April 19, 2001 letter and the effect of any such non-response.[22]

However, Union goes one step further and argues that the letters themselves are also unavailable for consideration here, because they are hearsay and thus barred by Fed. R. Civ. P. 56(c)(2). Under Rule 56(c)(2), "A party may object that the material cited to support or dispute a fact *cannot be presented* in a form that would be admissible in evidence." (emphasis added). But in interpreting that Rule, "[t]he Supreme Court and Third Circuit, though, have 'not precluded reliance on unauthenticated documents to oppose a motion for summary judgment, so long as they are *ultimately reducible* to admissible evidence.'" *In re Flonase Antitrust Litig.*, 815 F. Supp. 2d 867, 875-76 (E.D. Pa. 2011) (quoting *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 329 n. 6 (3d Cir. 2005)) (internal marks and citations omitted) (emphasis added). There is no reason to believe that just because the letters proffered by the USPS might be hearsay, they could

---

[22] The USPS asserts its own challenge to two affidavits proffered by the Union. It points out that the APWU filed its Motion for Summary Judgment and Concise Statement of Material Facts on December 12, 2012, but failed to file two supporting affidavits referenced therein (dated December 17 and 31, 2012) until January 17, 2013. The USPS correctly points that this violated the Local Rules of this Court, which require that motions for summary judgment – and their accompanying concise statements of material facts – be filed along with an appendix containing the documents relied upon, W.D. Pa. Local Civ. R. 56(B), and that the Federal Rules carry a similar requirement, *see* Fed. R. Civ. P. 56(c)(1). While this Court in no way condones such a practice, and indeed finds troubling in particular that affidavits that had not yet been executed were referenced in the Union's motion and brief, it is difficult to discern what prejudice, if any, the USPS suffered as a result. The two short affidavits detailed the proceedings before the arbitrators in the Brosovich and Kello cases, regarding facts which have never been controverted by the USPS throughout this case, and indeed, regarding facts which were agreed upon by the USPS in its Responsive Concise Statement of Material Facts. *See* ECF No. 29 ¶¶ 20-26. For this reason, the Court does not believe that it is either necessary or proper to take any action regarding this non-compliance with the Local and Federal Rules. This miscue simply is not material to the Court's decision.

23

not be converted into admissible form at trial. Furthermore, it is worth noting that the Union has made no challenge as to the authenticity of the letters – it just disputes Mr. Devine's ability or competence to divine their meaning. Thus, the Court may properly consider the letters themselves as proffered by the USPS in opposition to Plaintiffs' Motion for Summary Judgment, although it may not consider the explanatory assertions offered in the Devine Declaration.

Turning to the substantive arguments, in considering the USPS's arguments, the Court must also consider the effect of the two USPS letters based on the record advanced by the parties. While the USPS argues that the unresponded-to letter of April 19, 2001 had the effect under CBA Article 15.2 of making the USPS's position "the final word on the subject," it offers no textual or other support at all for this statement. Article 15.2 does lay out a process for the resolution of disputes, contemplating an initiation of a dispute, a meeting, shared letters of position, and a possible appeal. But Article 15.2 on its face is silent as to what happens when that procedure is not followed or concluded for any reason, and the USPS in particular has not pointed to any evidence that supports its conclusory statement that that effect of no rebuttal (notwithstanding the statement that "the time limits were extended by mutual consent") from the Union is a definitive "waiver" of the Union's position, or that the USPS's final position became the final word on the topic as a matter of labor contract law or interpretation.[23] In other words, just because the USPS says that the APWU's failure to respond to the April 19, 2001 letter rendered the APWU's position "waived"[24] in a permanent and binding fashion as between the parties, it has not shown any reason other than its own assertions why this would be so.[25]

---

[23] On the one hand, Mr. Devine's Declaration reveals no basis for his having personal knowledge to support the assertion that the Union did not respond as a factual matter, nor does it on the other hand lay a foundation for the evidentiary conclusion that there was the "absence of a record of a regularly conducted activity," i.e. that the Union's non-response can be proven by the absence of a record of it. *See* Fed. R. Evid. 803(7).

[24] The CBA does appear to provide that if the Union fails to meet a CBA-prescribed time limit, that grievance is then deemed waived. Article 15.4.B, ECF No. 12-1 at 97. However, the USPS has neither argued nor advanced any

24

The burden is on the USPS to show that a genuine issue of material fact exists as to whether the National Dispute constituted materially changed circumstances, where the Union has already shown that collateral estoppel would otherwise be applicable. In *Scooper Drooper*, the Third Circuit held that where the party opposing summary judgment and arguing that collateral estoppel did not apply failed to produce evidence that presented a genuine issue of material fact as to whether the controlling facts had changed, summary judgment was proper. 494 F.2d at 848. Here too, the USPS has not offered evidence sufficient to meet that burden – it has not offered any evidence, other than an inadmissible Declaration of one individual without personal knowledge, that demonstrates why based on those two letters this Court should come to the

---

admissible evidence that demonstrates (or even creates a genuine issue of material fact) that CBA Article 15.4.B is applicable here, or that its provisions were in fact triggered by the Union's failure to proceed within any agreed-upon, extended time limits. All that the record shows, read in a light most favorable to the USPS, is that all time limits (whatever they were) were extended by the April 19, 2001 letter. Further, the CBA provides at Article 15.4.B that if the USPS fails to timely raise the untimeliness of a Union response, any waiver argument is then considered as having been waived by the USPS. The record advanced by the USPS does nothing to illuminate those CBA provisions here. This is particularly important, since the April 19, 2001 letter submitted by the USPS recites the Union's very sharp disagreement with the USPS's stated position as to the post-award application of ELM § 436.

Furthermore, the Court notes that when the USPS argued ten years ago in *APWU Philadelphia* that the National Dispute constituted a waiver of the Union's position regarding ELM § 436, that court observed that the USPS had not provided it any evidence as to *when* the Union would have waived arbitration on the National Dispute. *See* 222 F. Supp. 2d at 688 n.11. The USPS was apparently not able to provide concrete facts as to this alleged "waiver" at a time far closer to the events in question, and likewise failed to do so here, a decade later.

[25] There is another troublesome feature of Plaintiffs' briefing: Plaintiffs never filed a Reply to Defendant's Responsive Concise Statement of Material Facts, ECF No. 29. Under LCvR 65, "Alleged material facts set forth in . . . the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." The additional material facts asserted by the USPS cover the topics of (1) the National Dispute and (2) Plaintiffs' failure to file the affidavits on which it relied in its Motion for Summary Judgment. The Court has already addressed Plaintiffs' failure to file their affidavits properly. As for the facts pertaining to the National Dispute, the facts that are objected to in Plaintiffs' Reply brief are those which constitute the substance of Mr. Devine's Declaration. *See* ECF No. 32 at 2-4. Because Mr. Devine's Declaration may not be relied upon by the USPS to oppose Plaintiffs' Motion for Summary Judgment, the corresponding additional statements of material facts that emanate from it (excluding those that merely relate the content of the two letters), ECF No. 29 ¶¶ 27-33, also may not be relied upon, and thus Plaintiffs' position is not impaired by their failure to respond to those additional statements of material fact. Therefore, once again, the Plaintiffs' procedural failing is not material to the Court's decisional process.

conclusion that the issue plaguing these parties for decades was swiftly and decisively resolved by the APWU's failure to send a letter back to the USPS in 2001.

In sum, the USPS has not demonstrated that the National Dispute effected a change in the controlling facts since *Pittsburgh Metro I* was decided. The issue considered and actually litigated in that case was identical to this one, it was necessary to the prior ruling, it was fully and fairly litigated by these parties in that case, and no equitable exceptions to collateral estoppel apply. In such circumstances, an employer is not permitted to engage in a game of dodgeball with a never-ending lineup of federal judges, asking each of them to take their turn at deciding (again) the very same issues previous federal judges have adjudicated against it. The Supreme Court has told us for decades that final and binding arbitration awards are just that, final and binding. The *Steelworkers* Trilogy does not countenance serial efforts to overturn them judicially on repeatedly-rejected grounds, with each case beginning in the hope that it will somehow turn out differently than the last one. The USPS is precluded from arguing here that it may unilaterally apply the ELM after an unambiguous arbitration award of "full back pay" (or a substantially similar award), and deduct from an employee's award for a failure to take reasonable measures to seek alternative employment.[26]

## C. Conclusion

For the reasons stated above, the Union's Amended Complaint adequately states a claim for relief, and this Court has the power to adjudicate these matters. This Court holds that the final and binding arbitration awards relating to Mr. Kello and Ms. Brosovich must be enforced (1) because the Court agrees with the reasoning of prior decisions that the USPS may not challenge an unambiguous award by later unilaterally applying deliberately bypassed mitigation

---

[26] As noted above, the non-materiality of the National Dispute also vitiates the USPS's argument that the six (6) cases all finding against the USPS on this precise issue lack persuasive authority.

26

principles, and also (2) because under the doctrine of collateral estoppel, the USPS is precluded from now making that argument in this case. Summary judgment in favor of the Union is proper because it has demonstrated that there is no genuine issue of material fact and it is entitled to a judgment enforcing those awards as a matter of law.[27] Defendant USPS's Motion to Dismiss, ECF No. 11 is denied, and Plaintiffs' Motion for Summary Judgment, ECF No. 23, is granted.

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: April __ 2013

cc:     All counsel of record

---

[27] Plaintiffs also sought an award of attorneys' fees. ECF No. 8 at 6; ECF No. 13 at 14-15. Such an award is discretionary with the Court. *See Wilkes Barre Hosp. Co., LLC v. Wyoming Valley Nurses Ass'n Pasnap*, 453 F. App'x 258, 261 (3d Cir. 2011) (citing *Chauffeurs, Teamsters and Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir.1980)). While it is a close call, the Court concludes that the USPS had a sufficiently principled basis in light of its "changed circumstances" argument to litigate the matter, so such an award would be improvident in this case.